UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:17-cv-6-FDW
(3:09-cr-44)

| | |
|---|---|
| CHRISTINA H. CLARK, )<br>)<br>Petitioner, )<br>)<br>Vs. )<br>)<br>UNITED STATES OF AMERICA, )<br>)<br>Respondent. )<br>_____ ) | **ORDER** |

**THIS MATTER** is before the Court on Petitioner's Petition for Writ of Error Coram Nobis Pursuant to 28 U.S.C. § 1651. (Doc. No. 3). Petitioner is represented by Charles Morgan and Marcia Shein. For the reasons set forth below, the Court denies the petition.

**I.  BACKGROUND**

On August 31, 2016, Christina Clark filed the pending petition for a writ of error coram nobis, challenging the restitution component of the criminal sentence this Court imposed in 2010. In 2006 and 2007, Petitioner participated in a mortgage-fraud scheme in Waxhaw, North Carolina. (Crim. Case No. 3:09-CR-44, Doc. No. 12 at 3-5: Presentence Report ("PSR")). A real estate agent, Petitioner personally participated in about nine different fraudulent real-estate transactions involving mortgage loans, facilitating fraudulent straw purchases and related fraudulent transactions. (Id. at 5-7). Petitioner received payments for her participation in the form of real-estate commissions, "bonuses," and payments for purported design and decorating work. (Id. at 5-6).

In March 2009, Petitioner pleaded guilty to two counts of conspiracy to commit bank fraud, 18 U.S.C. § 371, and two counts of conspiracy to launder money, 18 U.S.C. § 1956(h),

1

pursuant to a written plea agreement.  (Id. at 1-2).  In exchange for her plea of guilty and compliance with other terms of the agreement, the Government agreed that it would not prosecute Petitioner for additional known offenses arising from the conduct described in the charging document.  (Id., Doc. No. 2 at 1: Plea Agreement).  The Government also agreed to recommend a two-offense-level reduction under the United States Sentencing Guidelines for acceptance of responsibility, U.S.S.G. § 3E1.1(a), and to move for an additional one-level reduction for entering a timely plea, U.S.S.G. § 3E1.1(b).  (Id. at 2).

Petitioner and the Government agreed to recommend that the Court find that an 18-offense-level increase was appropriate under section 2B1.1 of the Guidelines, (id. at 3), which corresponds to a loss amount of "[m]ore than $2,500,000."  U.S.S.G. § 2B1.1(b)(1)(J) (2008).  Petitioner represented that she understood that restitution, under the applicable statute, "may be different from, greater, or lesser than" the loss under the Guidelines.  (Id., Doc. No. 2 at 2: Plea Agreement).  This Court's probation office prepared a presentence report concluding that the United States Sentencing Guidelines advised a term of imprisonment of 46 to 57 months.  (Id., Doc. No. 12 at 14).  That range was based, among other things, on a conclusion that Petitioner warranted a 3-offense-level adjustment for acceptance of responsibility.  (Id. at 8).  The presentence report determined the amount of loss caused by her offense was $5,113,963.46.  (Id.).  The presentence report also concluded that "[r]estitution in the amount of $5,113,963.46 [was] outstanding."  (Id. at 15).  The report explained that "investigating agents determined loss and restitution by subtracting the value of the properties at the time of the foreclosure sales from the original loan amounts."  (Id. at 7).  See United States v. Robers, 134 S. Ct. 1854, 1856, 1859 (2014) (approving this methodology for determining restitution in mortgage-fraud cases).  Using that methodology, the presentence report identified five different banks and the Federal Deposit

2

Insurance Corporation as victims who suffered losses, ranging from slightly more than $300,000 to slightly more than $1.2 million. (Id. at 7). The report noted that only one bank, First Tennessee Bank, had responded to inquiries by the probation office. (Id.). As to that bank, the presentence report determined that Petitioner owed $801,000 in restitution for losses on a property listed at 412 Gladelynn Way in Waxhaw, North Carolina.[1] (Id., Sentencing Tr. at 21, 29; Doc. No. 12 at 7).

Petitioner did not file any objections to the final presentence report, but she filed a sentencing memorandum seeking a sentence below what the Guidelines advised. (Id., Doc. No. 12 at 17-18; Sentencing Tr. at 6). This Court sentenced Petitioner to a term of imprisonment of 21 months, less than half of the low end of the range the presentence report stated was advised by the United States Sentencing Guidelines. (Id., Sentencing Tr. at 31, 35, 40). The Court imposed the sentence after considering remarks from both the Government and Petitioner's attorney that Petitioner had been extraordinarily cooperative. (Id. at 7, 12-13). The Court also ordered Petitioner to pay restitution to First Tennessee Bank in the amount of $801,000. (Id. at 42). Although the transactions in which Petitioner had personally been involved caused "actual loss" of more than $5.1 million, (id. at 21), the Government explained that it was "unclear who had suffered that loss" because only First Tennessee had formally responded with information related to restitution. (Id. at 20). The Court declined to enter a restitution judgment in favor of the other entities described in the presentence report, which had not filed declarations of losses. (Id. at 31). The Court adopted the presentence report, noting that restitution would be limited to the $801,000 owed First Tennessee Bank, instead of the more than $5.1 million calculated by the

---

[1] First Tennessee Bank submitted a Declaration of Victim Losses to the Court, stating that it was entitled to restitution in the total amount of $1,646,678.68, with losses on the property at 412 Gladelynn Way totaling $827,545.84. (Doc. No. 7-1: Ex. 1 to Gov't Response in Opposition).

3

report. (Id., Sentencing Tr. at 6; Doc. No. 21 at 1, 3: Statement of Reasons).

The Court entered its judgment on December 15, 2010, and Petitioner did not appeal. (Id., Doc. No. 20: Judgment). Petitioner completed her prison term, and this Court terminated her supervised release early on September 17, 2013. (Id., Doc. No. 31). On August 31, 2016, more than five years and eight months after the judgment in her criminal case became final, Petitioner filed the pending petition for a writ of error coram nobis, alleging that her attorney's failure to challenge the restitution order was ineffective assistance of counsel. Petitioner contends in the petition that First Horizon, a bank holding company of First Tennessee Bank, was the proper victim, not First Tennessee Bank. Petitioner explains that the property at issue— a residence at 412 Gladelynn Way in Waxhaw, North Carolina—was sold by Jackson Custom Homes, LLC to Dan Richards on July 20, 2007. First Horizon, a bank holding company of First Tennessee, provided a loan for the purchase of the Gladelynn Way property in the amount of $1,050,000.00. Petitioner contends that, as a bank holding company of First Tennessee, "[w]hile First Horizon has a relationship with First Tennessee, they are separate legal entities in the eyes of the law and, therefore, the judgment listing First Tennessee as the victim is incorrect." (Doc. No. 3 at 7). Petitioner further contends that the amount of restitution ordered--$801,000—was incorrect because this figure did not take into account the fair market value of the recovered asset. Petitioner explains that the initial loan was for $1,050,000.00. By the time the judgment was entered, First Horizon had bought the property from itself through foreclosure for $1,104,525.84, which Petitioner argues was the fair market value of the property at the time of the foreclosure sale. Petitioner contends that the amount she was ordered to pay should have been offset by the value of the property. Petitioner contends therefore that no restitution was actually owed to First Horizon. Petitioner contends that she did not raise this issue earlier "due

4

to First Tennessee's misconduct and the ineffective assistance of her prior counsel." (Doc. No. 3 at 5). Petitioner contends that "[h]ad First Tennessee not misrepresented this critical information or had Mr. Clark's counsel uncovered these serious errors, she would have insisted on appealing the order immediately. First Tennessee's misconduct and counsel's ineffective failure to uncover these serious errors in the order excuse [Petitioner's] failure to raise this issue earlier." (Id. at 10).

Following an order from this Court, the Government filed its response on December 21, 2016, opposing the petition for writ of error coram nobis, and Petitioner filed her Reply on December 28, 2016. (Doc. Nos. 7; 8).

## II. DISCUSSION

Under 28 U.S.C. § 1651(a), coram nobis relief is only available when all other avenues of relief are inadequate and where the defendant is no longer in custody. In re Daniels, 203 F. App'x 442, 443 (4th Cir. 2006) (unpublished); United States v. Mandel, 862 F.3d 1067, 1075 (4th Cir. 1988). Even where a defendant has served his time and believes he was unjustly convicted, coram nobis relief is only available in very limited circumstances. In reviewing a petition for a writ of error coram nobis, the Court "must presume that the underlying proceedings were correct, and the burden of showing otherwise rests on the petitioner." Hanan v. United States, 402 F. Supp. 2d 679, 684 (E.D. Va. 2005), aff'd, 213 F. App'x 197 (4th Cir. 2007). The burden placed on a petitioner who seeks a writ of coram nobis exceeds the burden placed on a petitioner who seeks collateral relief through a habeas petition. Id. This heavier burden is justified in coram nobis proceedings, because where, as here, the petitioner has completed her sentence, the government is unlikely to allocate scarce prosecutorial resources to retry a defendant who will not be resentenced. See id. Indeed, the United States Supreme Court has

5

stated that "it is difficult to conceive of a situation in a federal criminal case today where a writ of coram nobis would be necessary or appropriate," Carlisle v. United States, 517 U.S. 416, 429 (1996) (internal quotation marks and brackets omitted) (quoting United States v. Smith, 331 U.S. 469, 475 n.4 (1947)).

In discussing relief through a writ of coram nobis, the Fourth Circuit recently held, in United States v. Akinsade, as follows:

> As a remedy of last resort, the writ of error coram nobis is granted only where an error is "of the most fundamental character" and there exists no other available remedy. United States v. Mandel, 862 F.2d 1067, 1075 (4th Cir.1988). The writ is narrowly limited to "'extraordinary' cases presenting circumstances compelling its use 'to achieve justice.'" United States v. Denedo, 556 U.S. 904, 129 S. Ct. 2213, 2220, 173 L.Ed.2d 1235 (2009) (quoting United States v. Morgan, 346 U.S. 502, 511, 74 S. Ct. 247, 98 L.Ed. 248 (1954)). Thus, the writ provides relief in cases where the error "rendered the proceeding itself irregular and invalid." United States v. Addonizio, 442 U.S. 178, 186, 99 S. Ct. 2235, 60 L.Ed.2d 805 (1979) (internal quotation marks and citation omitted) (superseded by statute on other grounds). A petitioner seeking this relief must show that "(1) a more usual remedy is not available; (2) valid reasons exist for not attacking the conviction earlier; (3) adverse consequences exist from the conviction sufficient to satisfy the case or controversy requirement of Article III; and (4) the error is of the most fundamental character." Hirabayashi v. United States, 828 F.2d 591, 604 (9th Cir. 1987).

686 F.3d 248, 252 (4th Cir. 2012). After considering the four factors articulated in Akinsade, the Court concludes that Petitioner is not entitled to relief through a writ of coram nobis because Petitioner fails to show valid reasons for not attacking the conviction earlier, nor has Petitioner shown that the alleged error is of a fundamental character such that relief is appropriate through a writ of coram nobis.

A. Petitioner has not presented valid reasons for not attacking the conviction earlier.

First, to obtain relief on a writ of error coram nobis, a petition "must show" that "valid reasons exist for not attacking the conviction earlier." Akinsade, 686 F.3d 248, 252 (4th Cir. 2012). Petitioner contends that she declined to challenge this Court's restitution order until now

6

for two reasons. Petitioner contends, first, that First Tennessee misrepresented that it was a victim and misrepresented the amount it was owed. (Doc. No. 3 at 10). Second, Petitioner contends that her "sentencing counsel" was ineffective in failing to uncover the defects in the order. (Id.). Neither of these purported reasons explain, let alone excuse, Petitioner's five-year-and-eight-month delay in bringing her petition. See Foont v. United States, 93 F.3d 76, 78 (2d Cir. 1996) (defendant not eligible for coram nobis relief because he failed to demonstrate sound reasons for delay of less than five years after entering guilty plea).

First Tennessee's purported misrepresentations do not explain why Petitioner could not have brought her claim earlier, either in a different proceeding or an earlier coram nobis petition. Petitioner was required to exercise, at the very least, "reasonable diligence" in bringing her claim. Id. (quoting Honeycutt v. Ward, 612 F.2d 36, 42 (2d Cir. 1979)). Petitioner bases her claim on what she contends are public records—filings with the "Register of Deeds"—in 2007 and 2008. (Doc. No. 3 at 2-3). She contends that a "reasonable investigation" was all that was necessary to uncover the error she asserts. (Id. at 12). She offers no explanation, however, for why she did not conduct that "reasonable investigation" in 2010, or in the years following that, and her failure to do so precludes her from showing that valid reasons exist for not presenting her claim earlier.

Nor would any ineffective assistance of "sentencing counsel" explain or excuse Petitioner's delay. If "sentencing counsel" had, in fact, been constitutionally deficient, that deficiency might excuse Petitioner's failure to raise the issue at sentencing. Her sentencing, however, was completed more than five years ago. Petitioner's sentencing counsel stated on the record that the sentencing hearing would be his "last time" serving as defense counsel. (Crim. Case No. 3:09-cr-44, Sentencing Tr. at 2). Petitioner cannot blame an attorney who last

7

represented her in 2010 for her failure to exercise reasonable diligence in challenging her restitution order during the five and a half years that followed. And, as explained below, Petitioner has failed to establish that the performance of sentencing counsel was constitutionally deficient in any event.

The timing of Petitioner's motion is particularly inappropriate in light of the nature of her claim and the prison sentence she received. Petitioner admitted to participating in fraudulent real-estate transactions causing millions of dollars of losses to banks who lent money based on false information. She received a prison sentence well below what the Sentencing Guidelines would ordinarily advise for her offenses, after her attorney helped her convince the Government and this Court that she accepted responsibility for her conduct and was exceptionally cooperative. An attempt at sentencing to cast blame on the only victim ordered to receive restitution may well have undermined Petitioner's effort to portray herself as remorseful and cooperative.

In her Reply, Petitioner contends through counsel that sentencing counsel was ineffective in not investigating the veracity of First Tennessee's claim and that "it was only after undersigned counsel was retained and conducted a reasonable investigation that the serious error in the judgment was uncovered. Until then, Petitioner justifiably assumed that counsel had satisfied his constitutional obligations and First Tennessee had accurately portrayed itself as the victim." (Doc. No. 8 at 2). The Court cannot accept Petitioner's argument as to timeliness. Under Petitioner's timeliness argument, a petition for error coram nobis challenging a restitution order would always be timely, no matter how long a petitioner waits to retain new counsel to uncover alleged errors by prior counsel. Principles of finality dictate that the Court cannot accept such a result. In sum, Petitioner has not presented valid reasons for not attacking the

8

restitution order earlier.

B. Petitioner's motion does not seek relief from an error of the most fundamental character.

The Court further finds that Petitioner is not entitled to a writ of error coram nobis because, even assuming that the amount of restitution ordered was in error, the error was not 'of the most fundamental character.'" Bereano v. United States, 706 F.3d 568, 576 (4th Cir. 2013). Coram nobis is properly used to challenge only fundamental errors resulting in erroneous convictions, not noncustodial components of sentences. If some context exists in which an error in the restitution component of a criminal sentence could be considered fundamental, Petitioner's case does not present that context, particularly where the restitution order of $801,000 was far less than the stated amount of total loss of more than $5 million. Accord United States v. Bilal, 941 F. Supp. 2d 397, 404-405 (S.D.N.Y. 2013) (in mortgage fraud conviction, where the defendant contended that the victims could not verify the loss amount, finding no fundamental error warranting coram nobis relief where the restitution amount was $461,114, and where the defendant stipulated that the loss amount attributable to his conduct was between $1 million and $2.5 million, and where he did not object to the presentence report); United States v. Mirza, 755 F. Supp. 2d 329, 332-33 (D. Mass. 2010) (denying petition for writ of error coram nobis challenging restitution order, noting that "it appears unlikely that the First Circuit would sanction the use of such an extraordinary remedy to revisit a restitution order").

The Court further observes that, although some circuits have recognized that coram nobis is available to challenge a restitution order, the standard in the Fourth Circuit contemplates coram nobis as a remedy for invalid convictions, not for errors in restitution orders. See Bereano, 706 F.3d at 576 (explaining that "there must be a valid basis for the petitioner having

9

not attacked his convictions" and "the consequences flowing to the petitioner from his convictions must be sufficiently adverse"). Given that restitution orders are commonplace in criminal sentencing, if coram nobis provides an appropriate remedy for a restitution error, then the Supreme Court's statement that it has "difficult[y]" conceiving "of a situation in a federal criminal case today where a writ of coram nobis would be necessary or appropriate," Carlisle, 517 U.S. at 429, would be meaningless. Furthermore, as courts have observed, calculation of a restitution award "is not an exact science and . . . the calculation of a loss need not be precise." United States v. Kravchuk, 335 F.3d 1147, 1157 (10th Cir. 2003). In calculating the amount of restitution under the Mandatory Victim Restitution Act ("MVRA"), a sentencing court is "not held to a standard of absolute precision." United States v. Salas-Fernandez, 620 F.3d 45, 48 (1st Cir. 2010). A "modicum of reliable evidence" is enough to support a restitution order. Id. See also United States v. Bruchey, 810 F.2d 456, 458 (4th Cir. 1987) (explaining that courts have broad discretion to impose restitution orders).

As the Government notes, the Fourth Circuit recently interpreted the kind of fundamental error cognizable in a post-conviction challenge in a way that excludes a challenge to a restitution award. The Court held that an erroneous "career offender designation" under the United States Sentencing Guidelines is not "a defect of a 'fundamental nature.'" United States v. Foote, 784 F.3d 931, 942 (4th Cir. 2015). Even though that erroneous designation "increased dramatically" the defendant's "advisory Guidelines range," and probably resulted in a "vastly-increased" prison sentence, id. at 943, 944, the circuit noted that "[c]ourts have not used the term 'fundamental' lightly." The Fourth Circuit cited as examples of fundamental errors deprivation of basic protections preventing a criminal trial from reliably determining guilt or innocence and gross sentencing errors, such as sentences issued in excess of the maximum authorized by law,

10

id. at 942. Considering Foote, this Court agrees with the Government that if an error that may have vastly increased the amount of liberty of which a defendant was deprived is not a fundamental error under Fourth Circuit precedent, then neither is an error affecting only a restitution order of the kind imposed on Petitioner.[2]

Moreover, even if an error affecting only a restitution order could, under appropriate circumstances, be an error of the most fundamental kind, the error that Petitioner alleges here does not meet that standard. Petitioner's contention that "'First Horizon' was the victim" instead of its affiliate, First Tennessee Bank, does not allege a fundamental defect. Correcting that alleged error would subject her to the same obligation, only to a different entity. Nor would an error in the amount owed to that victim be in any sense "fundamental." Petitioner does not dispute that conduct for which she was responsible resulted in $5.1 dollars in actual losses— more than five times the amount of restitution this Court ordered her to pay. Numerous victims were "directly and proximately harmed as a result of the commission" of her offenses, 18 U.S.C. § 3663A, and her guilty plea exposed to Petitioner restitution liability well above what she was ordered to pay to First Tennessee Bank. Accordingly, even if that amount were erroneous, it was simply not a "fundamental" error warranting relief through coram nobis.

C. Alternatively, Petitioner's claims are meritless.

---

[2] Petitioner contends that the Government has incorrectly relied on Foote because Foote was decided in the context of a 28 U.S.C. § 2255 petition and involved the career offender provisions of the sentencing guidelines. The Court finds, however, that Foote provides useful guidance to this Court in assessing what the Fourth Circuit considers an error "of the most fundamental character." If the Fourth Circuit does not consider an error in the sentencing guidelines, resulting in a longer sentence, to be a fundamental error warranting relief under Section 2255, then it is not likely that the Fourth Circuit considers an error in a restitution order to be a fundamental error warranting extraordinary relief through a writ of coram nobis. Particularly given that restitution orders are not an exact science, allowing defendants to challenging restitution orders years after they have been sentenced through writs of coram nobis would invite a torrent of litigation.

Finally, even if Petitioner could meet the requirements for seeking coram nobis relief, her request would be meritless. First, this Court properly ordered Petitioner to pay $801,000 in restitution to First Tennessee Bank based on the evidence presented at sentencing as to loss. That is, at sentencing, the Court "may accept any undisputed portion of the presentence report as a finding of fact." FED. R. CRIM. P. 32(i)(3)(A). At sentencing, no party disputed the portion of the presentence report finding that Petitioner owed $801,000 in restitution to First Tennessee Bank. This Court was therefore entitled to adopt that finding, and the Court appropriately did so.

More significantly, the facts alleged in the petition do not establish that the performance of Petitioner's attorney was constitutionally deficient. To prevail on a theory of ineffective assistance of counsel, Petitioner must show that her attorney's performance fell below an objective standard of reasonableness, judged "from counsel's perspective at the time." Strickland v. Washington, 466 U.S. 668, 689 (1984). This standard requires this Court to "address not what is prudent or appropriate, but only what is constitutionally compelled." Burger v. Kemp, 483 U.S. 776, 794 (1987) (quoting United States v. Cronic, 466 U.S. 648, 665 n.38 (1984)). The Supreme Court has explained that the Constitution grants counsel "wide latitude" in "making tactical decisions." Strickland, 466 U.S. at 689. Accordingly, "[j]udicial scrutiny of counsel's performance must be highly deferential," and "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. "The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom.'" Harrington v. Richter, 131 S. Ct. 770, 788 (2011).

Even if Petitioner were able to establish attorney conduct that fell below an objective standard of reasonableness, Petitioner would remain unable to establish a constitutional violation

12

unless she could also establish prejudice in the form of "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," Strickland, 466 U.S. at 694.  Petitioner has failed to establish that the performance of her attorney was "incompeten[t] under 'prevailing professional norms.'"  Harrington, 131 S. Ct. at 788.  Petitioner's attorney helped her secure a prison sentence well below what her crimes would presumptively demand.  Furthermore, she was subject to a restitution order well below the amount of loss the Government presented at sentencing.  Finally, this Court terminated her supervised-release sentence early.  To the extent Petitioner's attorney declined at sentencing to accuse one of Petitioner's victims of "misconduct in misleading the court" to avoid an obligation to pay any restitution, counsel's conduct was entirely reasonable.  Petitioner's attorney helped Petitioner portray herself to this Court as someone who accepted responsibility for her conduct and who was cooperative to an unusual degree, even convincing the Government to praise her cooperation to this Court.  Counsel did so to advocate for a low prison sentence, and ultimately secured one for her, in large part because this Court recognized her acceptance of responsibility and cooperation.  Petitioner admitted that she caused millions of dollars in losses to victims.  Accusing a victim whom investigating agents and the probation office had determined to have shared in those losses could well have undermined counsel's effort to portray Petitioner as someone who accepted full responsibility for her conduct.  Even if Petitioner had a realistic chance of reducing her restitution obligation, omitting to challenge that obligation to avoid the risk of a greater prison sentence would have been entirely reasonable.  See Truesdale v. Moore, 142 F.3d 749, 754 (4th Cir. 1998) (omitting to pursue a strategy that is a double-edged sword is not objectively unreasonable).

Second, even if challenging the restitution order would have presented no downside,

Petitioner's attorney's omission to do so would have been objectively reasonable. "[A]n attorney is not ineffective for failing to raise meritless, or even long-shot, theories," Carrasco v. United States, No. 3:13-CR-199-RJC-1, 2016 WL 6023539, at *4 (W.D.N.C. Oct. 13, 2016) (citing United States v. Mason, 774 F.3d 824, 830 (4th Cir. 2014)). Petitioner has not demonstrated that a challenge to this Court's restitution order would have had merit. Petitioner contends that the bank provided a loan for a property located at 412 Gladelynn way in the amount of $1,050,000, and then, during foreclosure proceedings, acquired the property for $1,101,317.19. (Doc. No. 3 at 3, 7-8). She contends that the latter figure represents the value of the property returned to the victim, and the amount of restitution she owed should have been offset by that value. (Id. at 7-8). The Supreme Court has specifically rejected Petitioner's contention regarding valuation. Robers, 134 S. Ct. at 1856. When a bank loses money from a loan and then acquires the collateral property securing the loan, the bank will ordinarily "sell that . . . property and receive money from the sale." See id. at 1858. The appropriate measure of restitution to the lender of a fraudulent home loan is the amount the bank lent less the amount the bank received when it sold the property to a third party. See id. at 1856, 1858. The value "as of the time it was received" by the victim-lender is irrelevant. Id. at 1858.[3] First Tennessee Bank applied the measure described by the Supreme Court in Robers. The bank declared that the "proceeds of the sale" of the

---

[3] The price First Tennessee Bank paid to acquire the Gladelynn property during a foreclosure proceeding is not an appropriate measure of the value of the property at the time of that acquisition in any event. See United States v. Green, 648 F.3d 569, 584 (7th Cir. 2011) ("Where a lender forecloses and acquires the property at a public auction by making a credit bid (i.e., a bid that offers to cancel the outstanding principal, interest, and related fees in return for title to the property), the credit bid is not a reliable measure of the actual market value of the property."). Accordingly, even if this Court were to overlook Robers and agree with Petitioner that it should have considered the value of the property at the time the bank acquired it, neither Petitioner's allegations nor her exhibits would establish that this Court erred or that her attorney had grounds to challenge the restitution order.

14

Gladelynn Way property totaled $498,884.16, and subtracted that amount from the unpaid balance of the loans associated with that property when describing its losses. (Doc. No. 7-1 at 4).[4] Nothing in Petitioner's petition demonstrates that First Tennessee's statements are false or that the restitution determination prepared by investigating agents and included in the presentence report is incorrect.

Nor can Petitioner establish prejudice from any omission by her attorney to challenge the amount of restitution this Court ordered her to pay. As explained above, nothing in Petitioner's petition or the exhibits attached to it suggests that the restitution amount described in the presentence report was erroneous. It would not have been enough for Petitioner to make a "mere objection" to the presentence report. United States v. Terry, 916 F.2d 157, 162 (4th Cir. 1990). "Without an affirmative showing the information is inaccurate, the court" would have remained "'free to adopt the findings of the [presentence report] without more specific inquiry or explanation.'" Id. (brackets in original) (quoting United States v. Mueller, 902 F.2d 336, 346 (5th Cir. 1990)). Petitioner has not demonstrated how her attorney could have made the required affirmative showing. Even if Petitioner had been able to put the Government to its burden to establish the restitution amount by a preponderance of the evidence, any allegation that the Government would have failed to present credible evidence from law-enforcement agents, the victim, or other sources amply establishing the restitution amount is entirely speculative. See United States v. Scherer, 673 F.2d 176, 179 (7th Cir. 1982) (noting that "speculation as to what probably occurred or what may have been possible" does not support coram nobis relief).

---

[4] First Tennessee's submission states that the property at 412 Gladellyn Way was also subject to a second lien unmentioned by Petitioner. (Doc. No. 7-1 at 4). The submission describes a loss of $827,545.84 for that property based on the sum of the unpaid balances of the first and second liens less the proceeds from the sale of the property. (Id.).

Petitioner's contention that her attorney should have challenged this Court's designation of First Tennessee Bank, instead of First Horizon, as the victim fares even worse than her contention about the restitution amount. Petitioner concedes that one of these entities "was the 'victim.'" (Doc. No. 3 at 7). Therefore, naming the wrong entity would not have affected Petitioner's obligation to pay restitution. Counsel would have been entirely reasonable to ignore this issue—even if it were viable—to focus on those that would affect Petitioner's substantial rights. Chandler v. United States, 218 F.3d 1305, 1318 (11th Cir. 2000) ("Good advocacy requires 'winnowing out' some arguments . . . to stress others."). Moreover, as the Government notes, the plea agreement, as permitted by statute, 18 U.S.C. § 3663A(a)(3), extends Petitioner's restitution obligation to "all victims directly or indirectly harmed" by Petitioner's relevant conduct. (Crim. Case No. 3:09-cr-44, Doc. No. 2 at 4: Plea Agreement). The documents that Petitioner attached to her petition establish that "First Horizon Home Loans" was a "Division of First Tennessee Bank National Association." (Doc. No. 3-2 at 1: Pet. Ex. B; Doc. No. 3-3 at 3: Pet. Ex. C). The Government argues, and this Court agrees, that Petitioner has identified nothing that demonstrates First Tennessee Bank was not directly or indirectly harmed by Petitioner's offense or relevant conduct. Petitioner's attorney was not unreasonable for omitting to pursue a theory that would have done nothing to help Petitioner, and Petitioner cannot establish a reasonable probability that she would have received a different sentence if her attorney had done so.

In sum, as discussed above, Petitioner does not challenge the kind of fundamental error that is properly the subject of a writ of error coram nobis, her petition comes too late, and her claims are meritless. Therefore, for all these reasons, the Court denies the petition.

### III. CONCLUSION

For the reasons stated herein, the Court denies the petition for a writ of error coram nobis.

### ORDER

IT IS, THEREFORE, ORDERED THAT:

1. Petitioner's Petition for Writ of Error Coram Nobis Pursuant to 28 U.S.C. § 1651, (Doc. No. 3), is **DENIED**.

2. The Clerk is instructed to terminate this action.

3. **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

Signed: January 27, 2017

Frank D. Whitney
Chief United States District Judge